# Case No. 21-1620

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

ESTATE OF SETH MICHAEL ZAKORA; BRANDY ZAKORA, in her
capacity as the personal representative of the Estate of Seth Michael Zakora

Plaintiffs - Appellants,

v.

TROY CHRISMAN; MATTHEW HUNTLEY; CHADWICK MOBLEY;
STEVE JOHNSON; BONITA J. HOFFNER; STEVE RIVARD; HEIDI E.
WASHINGTON; BRANDON OAKS; RUSSELL RURKA; HEATHER
LASS; JAMES WOLODKIN; JAMES COLEMAN; UNKNOWN
PARTY, named as Jane Doe,

Defendants - Appellees.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MICHIGAN

---

### BRIEF OF APPELLANT

Christopher P. Desmond (P71493)
Madeline M. Sinkovich (P82846)
Johnson Law, PLC
535 Griswold Street, Suite 2600
Detroit, MI 48226
Tel: (313) 321-8300
cdesmond@venjohnsonlaw.com
*Counsel for Plaintiff-Appellant*

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ............................ ix

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES PRESENTED ........................................ 2

STATEMENT OF THE CASE ................................................................. 3

SUMMARY OF THE ARGUMENTS ................................................... 15

STANDARD OF REVIEW ................................................................. 16

ARGUMENT ................................................................................. 18

   I. THE DISTRICT COURT'S GRANT OF DISMISSAL TO DEFENDANTS WAS REVERSIBLE ERROR BECAUSE PLAINTIFF'S COMPLAINT STATES A CLAIM FOR RELIEF FOR VIOLATION OF THE EIGHT AMENDMENT AND WHERE PLAINTIFF WAS NOT AFFORDED AN OPPORTUNTIY FOR REASONABLE DISCOVERY ........................................................ 18

     a. The Eighth Amendment Imposes an Affirmative Duty on Prison Officials to Protect Inmates from Unreasonable Risks of Harm ................... 18

     b. The Presence of Drugs in MDOC Prison Facilities Poses a Substantial Risk of Health and Safety to Inmates ......................................... 21

     c. Plaintiffs' Complaint Properly Alleges Defendants Disregarded Known Risks to the Safety of Inmates Including Seth Zakora ..................... 24

     d. Defendants Are Not Entitled to Qualified Immunity ..................................... 44

II. THE DISTRICT COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND .............................................................46

CONCLUSION .........................................................................................54

CERTIFICATE OF COMPLIANCE ........................................................55

CERTIFICATE OF SERVICE ..................................................................56

APPENDIX .............................................................................................57

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................16

*Baker v. City of Hamilton*,
  471 F.3d 601 (6th Cir. 2006) ..............................................................44

*Bass v. Robinson*,
  167 F.3d 1041 (6th Cir. 1999) .............................................................25

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................16

*Bell v. Wolfish*,
  441 U.S. 520 (1979)..................................................................... 21, 22

*Berndt v. Tennessee,*
  796 F.3d 879 (6th Cir. 1986) .................................................. 47, 48, 49

*Block v. Rutherford*,
  468 U.S. 576 (1984)..................................................................... 21, 22

*Brown v. Bagery*,
  207 F.3d 863 (6th Cir. 2000) ........................................... 21, 30, 33, 45

*Brown v. Plata*,
  563 U.S. 493 (2011)............................................................................24

*Cacevic v. City of Hazel Park*,
  226 F.3d 483 (6th Cir. 2000) ..............................................................38

*Cahoo v. SAS Analytics Inc.*,
  912 F.3d 887 (6th Cir. 2019) ..............................................................45

*Campbell v. City of Springboro*,
   700 F.3d 779 (6th Cir. 2012) ................................................................26

*Celotex Corp v. Catrett*,
   477 U.S. 317 (1986)............................................................................17

*Coley v. Lucas Cnty.*,
   799 F.3d 530 (6th Cir. 2015) ................................................................31

*Cook v. Martin*,
   148 F. App'x 327 (6th Cir. 2005) ..........................................................30

*Cooper v. MRM Inv. Co.*,
   367 F.3d 493 (2004)............................................................................48

*Daily v. Monte*,
   26 F. Supp. 2d 984 (E.D. Mich. 1998) ...........................................51, 52

*Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989).......................................................................19, 20

*Emmons v. McLaughlin*,
   874 F.2d 351 (6th Cir. 1989) ................................................................38

*Estate of Carter v. City of Detroit*,
   408 F.3d 305 (6th Cir. 2005) ................................................................40

*Estelle v. Gamble*,
   429 U.S. 97 (1976)..............................................................................19

*Everson v. Leis*,
   556 F.3d 484 (6th Cir. 2009) ................................................................44

*Florence v. Bd. of Chosen Freeholders of Burlington*,
   621 F.3d 296 (3d Cir. 2010) .................................................................22

*FTC v. E.M.A. Nationwide, Inc.*,
   767 F.3d 611 (6th Cir. 2014) ..............................................................38

*Garretson v. City of Madison Heights*,
   2005 U.S. Dist. LEXIS 3669 (E.D. Mich. Dec. 15, 2005) ...................................53

*Golf Vill. N. LLC v. City of Powell*,
   826 F. Appx. 426 (6th Cir. 2020) ........................................................37

*Guertin v. Michigan*,
   912 F.3d 907 (6th Cir. 2019) ..............................................................45

*Hart v. Hillsdale Cty.*,
   973 F.3d 627 (6th Cir. 2020) ..............................................................29

*Helling v. McKinney*,
   509 U.S. 25 (1993) ............................................................... 18, 19, 20

*Henderson v. Hackel*,
   170 F.R.D. 430 (E.D. Mich. 1997) ........................................................ 51, 54

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ............................................................... 19, 21, 45

*Hutto v. Finney*,
   437 U.S. 678 (1978) ................................................................... 18, 19

*Keys v. Humana, Inc.*,
   684 F.3d 605 (6th Cir. 2012) ........................................................ 16, 34, 37, 42

*League of United Latin Am. Citizens v. Bredesen*,
   500 F.3d 523 (6th Cir. 2007) ..............................................................17

*Marable v. Bowling Green State Univ.*,
   2008 U.S. Dist. LEXIS 139244 (N.D. Oh. Oct. 23, 2008) ............................ 50, 53

*Moore v. Shelby Cty.*,
    718 F. Appx. 315 (6th Cir. Nov. 22, 2017) ................................................... 17, 39

*O'Brien v. City of Grand Rapids*,
    783 F. Supp. 1034 (W.D. Mich. 1992) ...................................................................50

*Overton v. Bazzetta*,
    539 U.S. 126 (2003)..............................................................................................22

*Ramirez v. Webb*,
    1988 U.S. Dist. LEXIS 1818 (W.D. Mich. May 3, 1988)....................................50

*Rhodes v. Michigan*,
    10 F.4th 665 (6th Cir. 2021) ................................................................... 21, 22, 25

*Rice v. Corr. Med. Servs. (In re Estate of Rice)*,
    675 F.3d 650 (7th Cir. 2012) ................................................................................25

*Spencer v. Bouchard*,
    449 F.3d 721 (6th Cir. 2006) ........................................................... 20, 21, 26, 45

*Suhuh v. Mich. Dept. of Corr.*,
    2017 U.S. App. LEXIS 25351 (6th Cir. Dec. 14, 2017)......................................37

*Taylor v. Mich. Dep't of Corr.*,
    69 F.3d 76 (6th Cir. 1995) .......................................................................... 28, 36

*Taylor v. O'Grady*,
    888 F.2d 1189 (7th Cir. 1989) ..............................................................................22

*Taylor v. Riojas*,
    141 S. Ct. 52 (2020)..............................................................................................45

*Tucker v. City of Richmond*,
    388 F.3d 216 (6th Cir. 2004). ..............................................................................45

*Turner v. Cook Cty. Sheriff's Office*,
  2020 U.S. Dist. LEXIS 41982 (N.D. Ill. Mar. 11, 2020) .....................................31

*United States v. Pooler*,
  2020 U.S. Dist. LEXIS 224934 (S.D. Ohio Dec. 1, 2020)...................................23

*United States v. Ulbricht*,
  858 F.3d 71 (2d Cir. 2017) ..................................................................................22

*Washington v. Harper*,
  494 U.S. 210 (1990).............................................................................................19

*White's Landing Fisheries v. Buchholzer*,
  29 F.3d 229 (6th Cir. 1994) .......................................................................... 17, 39

*Youngberg v. Romeo*,
  457 U.S. 307 (1982).............................................................................................20

## Rules

Fed. R. Civ. P. 8(a)(2) ..............................................................................................16

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff's counsel respectfully informs the Court that he believes oral argument is warranted because of the intricate facts surrounding the legal question presented in this appeal.  The present case involves a claim of deliberate indifference on behalf of a prison inmate.  While such cases are ordinarily factually intensive, that is particularly true in the present case because of the nature of the systemic problem with illicit drug smuggling by prison guards in Michigan prison facilities. Oral argument will assist the panel in determining whether the district court erred in concluding that Plaintiff failed to state a claim for relief against Defendants.

## **STATEMENT OF JURISDICTION**

The United States District Court for the Eastern District of Michigan exercised jurisdiction over this action pursuant to 28 U.S.C. § 1331. (Compl., RE 1, Page ID # 1-17).  In its opinion and order dated September 10, 2021, the district court granted dismissal and summary judgment to Defendants. (September 10, 2021, Opinion and Order, RE 59, Page ID # 607-612).  The district court entered judgment to Defendants on September 10, 2021. (Judgment, RE 60, PageID. 613).  Plaintiff filed a timely notice of appeal with the district court on October 8, 2021. (Not. of App., RE 61, Page ID # 614-615).  This Court exercised jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

## **STATEMENT OF THE ISSUES PRESENTED**

I.      Whether the district court erred in determining that Plaintiff's complaint failed to state a claim for relief under the Eighth Amendment where the complaint includes factual allegations showing each Defendant knew of and disregarded a substantial risk of serious harm to prisoners.

II.     Whether the district court erred in determining that Plaintiff's proposed second amended complaint failed to state a claim against the proposed defendants and failed to relate back to the date of filing where Plaintiff's amendments show the proposed Defendants were MDOC corrections officers smuggling dangerous and illegal drugs into Michigan prisons and where the proposed Defendants had constructive notice of Plaintiff's claims against them.

## STATEMENT OF THE CASE

Plaintiff-decedent, Seth Michael Zakora ("Seth"), tragically passed away on January 22, 2017. (Complaint, RE 1, Page ID # 33). Seth was only 21 years old and was incarcerated with the Michigan Department of Corrections ("MDOC") at the time of his death. (*Id*.; Critical Incident Report, RE 37-2, Page ID # 245). Seth's death was determined to be caused by "Fentanyl toxicity." (RE 37-2, Page ID # 289; Amended Complaint, RE # 3, Page ID # 33).

Prior to Seth's death, officials in the Michigan Department of Corrections ("MDOC") were on notice of a serious drug problem within the State's facilities. (RE 3, Page ID # 37-39). Specifically, Defendant Heidi Washington had knowledge that corrections officers were smuggling drugs into prisons, maintaining a dangerous drug ring, and retaliating against those who came forward, officers and inmates alike. (*Id*. at Page ID # 37, ¶ 42).

The complaint describes several incidents between 2016 and 2017 highlighting the prevalence of drug smuggling across MDOC facilities, including Lakeland Correctional Facility, where Seth was confined. (RE 3, Page ID # 33-40).

The complaint first details a lawsuit brought in April 2017 by a corrections officer, (hereinafter "Officer Canty"), after he reported another officer for smuggling drugs into an MDOC facility, the Gus Harrison Correctional Facility. (*Id*. at

PageID.37, ¶ 43).[1] Officer Canty had been informed of the drug smuggling by an inmate. (*Id*. at Page ID # 38, ¶ 45).

Officer Canty's lawsuit states that while the MDOC directed the Facility Inspectors to investigate the serious claim of officer-involved drug smuggling into prisons, no investigation ever occurred. (*Id*. at Page ID # 37, ¶ 41). After the claim was effectively ignored by the MDOC, Canty reported the smuggling to the Michigan State Police ("MSP"). (*Id*.).

Mere days after reporting to the MSP, the drug smuggling evidence disappeared from the evidence locker at the facility. (*Id*.). This evidence was believed to be a location where MSP had sole access. (*Id*. at Page ID # 38, ¶ 44).

After the evidence went missing, Officer Canty apparently reported it to the MDOC Internal Affairs. (*Id*. at ¶ 45). On the same day Canty reported the missing evidence to MDOC officials, the prisoner who originally confided in him about the officer smuggling drugs into the prison, was beaten to death in MDOC custody. (*Id*.). Two weeks later, on October 14, 2016, another prisoner who was named by the confessing prisoner to Canty as involved in the ring, was also killed in MDOC custody. (*Id*.).

---

[1] As a publicly available record, Plaintiff attached the Officer's official complaint as an exhibit to Plaintiff's opposition to Defendants' dispositive motions. (RE 42-1, Page ID # 391-432).

Officer Canty was fired from his position and only rehired after he brought the litigation detailed in part above. (*Id*. at ¶ 46). Plaintiff alleges the MDOC paid him $175,000 to settle his case. (*Id*.).

Next, Plaintiff's complaint alleges how a different officer, a supervisory official, reached out to Defendant Washington herself in 2016 to inform her of the dangers related to officer led drug smuggling in a MDOC facility, the G. Robert Cotton Correctional Facility. (*Id*. at ¶ 47).[2] In his capacity as a supervisor, he had already informed the upper brass administration in the facility where he was stationed. (*Id*.). After his accusations of officer-led drug smuggling in the facility also went ignored, and he began to personally experience retaliation from other staff, the supervisor reached out to Defendant Washington to inform her of the situation. (*Id*.). The complaint alleges that even after the supervisor reported officer-involved drug smuggling in the facility to Defendant Washington, the offending officer was not suspended from the job for another fifteen months. (*Id*. at Page ID # 39, ¶ 48).

---

[2] In addition to Plaintiff's well-plead complaint, these allegations are also documented in credible investigatory journalism, *see* Paul Egan, Detroit Free Press, Prison managers sue, allege Corrections Department wrecked their careers (Jan. 22, 2020)    https://www.freep.com/story/news/local/michigan/2020/01/22/michigan-prison-managers-rohrig-mccabe-sue-wrongful-firings/4526418002/

*see also* Paul Egan, Detroit Free Press, Fired Jackson prison manager who complained about smuggling seeks vindication (Feb. 6, 2018) https://www.freep.com/story/news/local/michigan/2018/02/06/fired-jackson-prison-manager-who-complained-smuggling-seeks-vindication/306682002/

During those fifteen months, the supervisor was also fired by MDOC and was subsequently rehired, with full back pay, but only after he won a civil service hearing for wrongful termination. (*Id*.).

Plaintiff's complaint alleges that between July 2016 and early 2018, anti-overdose medication had been used approximately 150 times in MDOC facilities. (*Id*. at ¶ 49).

Prior to Seth's death, several officials at Lakeland were alerted to both the rampant drug use and smuggling in the facility, as well as the risks to Seth specifically because of the presence of dangerous illicit drugs in MDOC facilities. (*Id*. at Page ID # 34-36, ¶ 27-38).

Plaintiff alleged that drugs were in abundance and being smuggled into MDOC's Lakeland Correctional Facility. (*Id*. at Page ID # 34, ¶ 27). These drugs were alleged in the complaint to be smuggled into Lakeland by a female corrections officer. (*Id*.). At the time Plaintiff filed the complaint, she did not know the name of the corrections officers involved in the drug smuggling ring in MDOC facilities. (*Id*. at Page ID # 32, ¶ 19). However, as will be further explained, during the pendency of Defendants' dispositive motions, an unnamed corrections officer employed by the MDOC came forward to one of Plaintiff's counsel to reveal the true identities of the officers, two males and a female, who were involved in smuggling drugs into the

facility, including those that caused Seth's untimely death. (Motion for Leave, RE 47, Page ID # 466-468).

On the weekend Seth passed away, he was one of three inmates to suffer an overdose at Lakeland. (RE 3, Page ID # 34, ¶ 28). On January 20 and 21, 2017, two other inmates had overdosed on illegal drugs. (*Id*.). These two inmates were housed in the same unit at the facility as Seth, C-Unit. (*Id*.). Defendants Hoffner, Washington, Rivard, Rurka, Chrisman, and Huntley knew of the previous overdoses but did not order a full investigation until after Seth died. (*Id*. at Page ID # 36, ¶ 38). Only after Seth's death did MDOC and MSP officials bring a drug dog into the facility. According to the reports, the dog made positive indications for contraband in C-Unit. (*Id*.).

The complaint alleges that prior to Seth's death, another prisoner had informed Lakeland Correctional Inspectors, Defendants Chrisman and Huntley, of the drug smuggling ring and had expressly provided the officers with information about how the drugs were coming in and out of the facility and to whom they were being given. (*Id*. at Page ID # 34, ¶ 29-30). Official documentation confirms that a prisoner was in fact sending messages via 'kites' detailing this information to MDOC's Inspectors at the Lakeland Facility prior to Seth's death. (MSP Supplemental Incident Report, RE 37-4, Page ID # 314).

7

This prisoner informed the Inspectors of the details of how illegal drugs were being smuggled into the facility and that large amounts of drugs were being supplied to Seth specifically. (RE 3, Page ID # 34, ¶ 30). Official documentation shows that when this prisoner was interviewed after Seth's death, he told the investigators that he had already provided the source of the drugs to Inspector Chrisman before any of the overdoses occurred. (RE 37-4, Page ID # 316). The source, as he told these officers, was a "cop/officer" bringing drugs into the facility. (*Id*. at Page ID # 317; RE 3, Page ID # 34, ¶ 27, ¶ 29, ¶ 37). Official documentation also states that despite receiving this information prior to any overdoses, Defendant Chrisman did not follow up with the prisoner until after the overdoses on January 20-21, and after Seth's death. (RE 37-4, PageID.315, 304).

In the MDOC, the position of Inspector at Lakeland Facility "is responsible for matters related to enforcement of security rules and regulations affecting the custody, security and safety of all who live in, work at or visit LCF." (Inspector Position Description, RE 42-2, Page ID # 434). The facility Inspector "performs rounds/inspections of the facility to monitor staff, prisoners and security operations. This position is the facility's chief investigative officer in matters of staff misconduct and criminal behavior involving either staff or prisoners." (*Id*.). Specifically, the Inspector "conducts inspections, investigations, and prevents introduction of

8

contraband into the facility. Duties include monitoring of prisoner attitude, behavior and problems." (*Id*. at Page ID # 437).

The complaint alleges that Defendant Chrisman told Huntley, the other inspector, about the information contained in the kites and that they both failed to act in response to their knowledge of dangerous and illegal drugs being given to Seth. (RE 3, Page ID # 35, ¶ 30-31, 8). The complaint further alleges Defendants Chrisman and Huntley told their supervisors, Defendants Warden Hoffner and Assistant Deputy Director Rivard who both failed to reasonably respond to the information. (*Id*. at ¶ 31, 11-12; RE 42-2, Page ID # 434).

Even after the first two overdoses occurred on January 20 and 21, the complaint alleges Defendant Hoffner, in her capacity as the Warden, Defendant Washington, the director of prisons, and Defendants Chrisman and Huntly, facility Inspectors, all knew of a serious drug problem at Lakeland prior to Seth's death but did not order a full investigation until after a death resulted at Lakeland from the drug smuggling. (RE 3, Page ID # 36, ¶ 38). Only after Seth's death did MSP bring a drug dog to the facility which made positive indication for contraband in Seth's unit, the same unit the two other overdoses occurred in the days prior. (*Id*. at ¶ 28, 38, 50).

The complaint alleges that Defendant Hoffner's administrative assistant, Defendant Rurka, and MSP Detective Sergeant, Defendant Lass, knew about the

drug smuggling and specifically knew that drugs were frequently being smuggled into the facility via basketballs filled with drugs being thrown over the facility's fence. (RE 3, Page ID # 35, ¶ 32, 40, 16). Defendant Rurka and Defendant Lass stated this to Plaintiff Brady Zakora after Seth's death. (*Id*. at ¶ 40, 16).

After Seth's death, the prisoner who informed Defendant Chrisman of drug smuggling in the facility was charged and convicted of smuggling drugs into Lakeland. (*Id*. at ¶ 36). This was done to avoid an internal investigation into the female corrections officer that had been credibly accused of bringing drugs into the facility and giving them to an inmate with whom she was romantically involved. (*Id*.). Despite more than one prisoner giving the same name of the involved inmate who was receiving the drugs from the officer, (RE 37-4, Page ID # 315-317, 322), there was no meaningful investigation into Defendant Jane Doe's unlawful conduct. (RE 3, Page ID # 36, ¶ 37). Lastly, the complaint alleges that three of the four MSP Troopers involved in the investigation into Seth's death are no longer employed by State of Michigan and that these officers knew that a cop/officer was brining drugs into the facility, but did not investigate the allegation. (*Id*. at ¶ 41).

On December 3, 2019, Plaintiff's estate commenced this lawsuit against Defendants, state employees in the MDOC and MSP. (RE 1, Page ID # 1-17). Plaintiff filed an Amended Complaint on December 4, 2019.  (RE 3, Page ID # 29-

47). Plaintiff alleged, among other things, that Defendants were deliberately indifferent and failed to protect Seth from a known risk of substantial harm. (*Id*.).

As their first responsive pleadings, all Defendants filed dispositive motions and supporting briefs. (RE 33, RE 34, RE 36, RE 37, RE 39).   The MDOC Defendants, Chrisman, Huntley, Mobley, Johnson, Hoffner, Rivard, Washington, and Rurka, argued that Plaintiff's complaint failed to state a claim upon which relief could be granted because the complaint didn't plead factual allegations showing that any of the MDOC Defendants had "personal involvement in Zakora's overdose." (RE 36, Page ID # 185). MDOC Defendants claimed that Plaintiff's complaint was premised on a respondeat superior theory and failed to establish individual liability. The MSP Defendants argued that Plaintiff's allegations were conclusory and threadbare. (RE 34, Page ID # 144). All Defendants claimed they were entitled to qualified immunity. (*Id*.; RE 37, Page ID # 215).

Plaintiff filed one combined response in opposition to Defendants' requests for dismissal. (RE 42, Page ID # 358-440). Plaintiff argued that the Eighth Amendment requires that prison officials provide incarcerated individuals with reasonable safety, and that rampant drug smuggling in MDOC facilities by prison guards was a substantial risk of harm to inmates. (*Id*. at Page ID # 372-375). Plaintiff identified specific instances that put all Defendants on notice of both the drug smuggling in MDOC prison facilities and the serious risk of harm it posed to

11

prisoners as a result. Plaintiff's complaint included detailed allegations showing that certain Defendants had clear notice that Seth specifically was at risk of overdose. (*Id*. at Page ID # 377-389). Plaintiff argued that her allegations sufficiently state a claim for deliberate indifference and failure to protect Seth from substantial risk of harm posed by drug smuggling in MDOC prison facilities. (*Id*.).

Further, Plaintiff argued that because her complaint stated a claim for relief under the Eighth Amendment the court should not grant summary judgment until Plaintiff had the opportunity to conduct reasonable discovery on her well-plead claims. (*Id*. at Page ID # 371, 389). Lastly, Plaintiff argued Defendants were not entitled to qualified immunity because no reasonable state official would find it appropriate to knowingly allow guard-led drug smuggling and fail to act to remove the illegal drugs from prison, despite knowledge and documented harm to prisoners as a result. (*Id*. at Page ID # 388).

After the dispositive motions were briefed but before the court produced any written opinion, Plaintiff filed a motion for leave to amend the complaint. Plaintiff explained that a MDOC corrections officers had called one of Plaintiff's counsel out of the blue and informed him of the names of three individuals who were involved in the drug smuggling at Lakeland Correctional Facility and had smuggled in the drugs that caused Seth's death. (RE 47, Page ID # 466-498). The female corrections officer was identified as Tammy Blair. (*Id*.). The other individuals involved in the

illicit and illegal narcotics trades, or alternatively knew about it and had the means and opportunity to intervene but chose not to, include: current corrections officer Thomas Ivany and former corrections officer Chase White. Ivany engaged in the smuggling of illegal narcotics into the prison together with Tammy Blair. White was also involved in the illegal narcotics trade in the Lakeland Correctional Facility and smuggled drugs into the prison, sold them, and otherwise provide them to inmates. (RE 47, Page ID # 468, ¶ 6; RE 47-1, Page ID # 486, ¶ 15-17).

Plaintiff argued that the amendment relates back to the date of the original filing under Fed. R. Civ. P. 15 because the drug-smuggling defendants had constructive notice of the lawsuit and knew they would have been named if their identities were made available by the State of Michigan and other Defendants. Plaintiff further argued that the drug-smuggling guards were employees of several named Defendants and therefore their inclusion in the lawsuit was proper. (*Id*. at Page ID # 474-481).

On July 23, 2021, Magistrate Judge Sally J. Berens issued a Report and Recommendation in which she recommended the district court grant Defendants' dispositive motions in full. (RE 53, Page ID # 522-546). The Magistrate determined that Plaintiff failed to state any plausible violation by the MSP or MDOC Defendants and that Plaintiff failed to demonstrate that discovery would enable them to defeat summary judgment. (*Id*. at Page ID # 530-541). The Magistrate also determined that

13

Plaintiff failed to demonstrate that the inclusion of the new drug-smuggling defendants related back to the initial filing under Fed. R. Civ. P. 15(c). (*Id*. at Page ID # 542-546).

Plaintiff objected to this recommendation and argued that the Eighth Amendment prevents state officials from acting with deliberate indifference to substantial risks of harm and that Plaintiff's complaint sufficiently alleged that each Defendant knew of and disregarded serious risks of harm to Seth as a result of the guard-led drug smuggling in MDOC facilities. (RE 54, Page ID # 553-586). Further, Plaintiff argued that the case law cited by Plaintiff and disregarded by the Magistrate was not overruled and that Plaintiff had shown that the inclusion of the drug smuggling officers met the Sixth Circuit's interpretation of the requirements of Fed. R. Civ. P. 15. (*Id*. at Page ID # 580-586).

On September 10, 2021, the United States District Court Judge Janet T. Neff issued an Opinion and Order in which the court rejected Plaintiff's objections and adopted the Magistrate's Report and Recommendation as the Opinion of the Court. (RE 59, Page ID # 607-612). The district court entered Judgement to Defendants on September 10, 2021. (Judgment, RE 60, PageID. 613). Plaintiff filed a timely notice of appeal with the district court on October 8, 2021. (Not. of App., RE 61, Page ID # 614-615).

14

## SUMMARY OF THE ARGUMENTS

Plaintiff's complaint states a claim against each Defendant named in the complaint. The Eighth Amendment prohibits state officials from acting with deliberate indifference to serious risks of harm of which they are aware. The district court failed to utilize a de novo review and plainly disregarded both the applicable Supreme Court and Sixth Circuit law, as well as the numerous factual allegations contained in Plaintiff's complaint which show that each Defendant was aware of the pervasive and rampant drug-smuggling problem in MDOC prisons at the hands of MDOC employees. Further, Plaintiff's complaint plausibly alleges that Defendants acted with deliberate indifference by disregarding their knowledge and acquiescing to drug smuggling in MDOC facilities and failing to protect Seth from the obvious and substantial risk of harm posed by drug smuggling in violation of the Eighth Amendment.

## STANDARD OF REVIEW

All that is required under the Federal Rules of Civil Procedure is for Plaintiffs to plead "a short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

The statement need only provide Defendants "fair notice" of the claims and their respective factual bases. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…. [it] requires more than labels and conclusions"). *Twombly* does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

"According to the Supreme Court, 'plausibility' occupies that wide space between 'possibility' and 'probability.'" *Keys v. Humana, Inc*., 684 F.3d 605, 610 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Id*. "Specific facts are not necessary." *Id*. at 608.

In deciding a motion under Rule 12(b)(6), the Court views the pleadings in a light most favorable to the Plaintiffs and assumes that all facts alleged in the

complaint are true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

As explained by the Supreme Court, summary judgment is only appropriate if "after adequate time for discovery," there are no genuine issues of material fact. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). Relying on *Celotex*, this Court explained that "a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery." *White's Landing Fisheries v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994). As long as the pleadings state a claim for relief, summary judgment should not be granted before discovery. *See Moore v. Shelby Cty.*, 718 F. Appx. 315, 321 (6th Cir. Nov. 22, 2017) ("The district court therefore should not have granted summary judgment for Defendants before discovery, inasmuch as it can be shown that Plaintiff stated a claim for First Amendment retaliation."); *White's Landing*, 239 F.3d at 230 ("Although there may be doubt as to the plaintiffs' chances of ultimate success, we nevertheless find that the district court abused its discretion by dismissing the plaintiffs' action without allowing for adequate discovery.").

# **ARGUMENT**

I.  THE DISTRICT COURT'S GRANT OF DISMISSAL TO DEFENDANTS WAS REVERSIBLE ERROR BECAUSE PLAINTIFF'S COMPLAINT STATES A CLAIM FOR RELIEF FOR VIOLATION OF THE EIGHT AMENDMENT AND WHERE PLAINTIFF WAS NOT AFFORDED AN OPPORTUNTIY FOR REASONABLE DISCOVERY

The district court incorrectly determined that Plaintiff's well-plead complaint failed to "state any plausible constitution violation." (RE 59, Page ID # 610). The district court and the magistrate judge disregarded the applicable law and incorrectly determined that Plaintiff's factually supported allegations failed to state a clam for relief. Plaintiff properly alleged that Defendants' knowing failure to act to protect inmates from obvious risks to health and safety as a result of the wide-spread smuggling of illegal drugs into prisons by Michigan Department of Correction employees violated the Eighth Amendment to the United States Constitution.

## a. The Eighth Amendment Imposes an Affirmative Duty on Prison Officials to Protect Inmates from Unreasonable Risks of Harm

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

The Eighth Amendment expressly bans the infliction of "cruel and unusual punishments." USCS Const. Amend. 8. This prohibition "'proscribes more than physically barbarous punishments.'" *Hutto v. Finney*, 437 U.S. 678, 685 (1978)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). "It prohibits penalties that are grossly disproportionate to the offense, as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Id*.

The Supreme Court has long explained that "the Amendment requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Helling*, 509 U.S. at 33 (quoting *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).

> "When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being."

*Helling*, 509 U.S. at 32 (quoting *Deshaney*, 489 U.S. at 199-200).

Accordingly, prison administrators "are under an obligation to take reasonable measures to guarantee the safety of the inmates" in their facilities. *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). *See also Washington v. Harper*, 494 U.S. 210, 225 (1990) ("Prison administrators have not only an interest in ensuring the safety of prison staffs and administrative personnel, but the duty to take reasonable measures for the prisoners' own safety.").

This affirmative duty exists because "having stripped [incarcerated persons] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 832-833 (1994) (explaining "prison officials have

a duty to protect prisoners from violence at the hands of other prisoners"); *see also Deshaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.").

As explained by this Court, an "Eighth Amendment claim may properly be premised on the defendants' failure" to act. *Spencer v. Bouchard*, 449 F.3d 721, 731 (6th Cir. 2006). "[I]n the prison context, an omission often is state action... As the Supreme Court has explained, 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.'" *Id*. (quoting *Deshaney*, at 200).

"That the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling*, at 33. It "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Id*. (quoting *Deshaney*, at 200). "It is 'cruel and un-usual punishment to hold convicted criminals in unsafe conditions.'" *Id*. (quoting *Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982)).

Guaranteeing the safety of incarcerated individuals includes taking action to prevent dangerous contraband and illegal drugs from entering the prison walls. *See Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ("Government must… take steps to maintain security …and make sure no weapons or illicit drugs reach detainees."); *Block v. Rutherford*, 468 U.S. 576, 587-588 (1984) (explaining that the purpose of permissible cavity searches in *Wolfish* "was to discover and deter the smuggling of weapons and contraband…[g]iven the security demands and the need to protect…other inmates."); *Hudson*, at 527 ("[Prison administrators] must be ever alert to attempts to introduce drugs and other contraband into the premises.").

Here, Seth's status as an incarcerated individual entitled him to the protections of the Eighth Amendment.

### b. The Presence of Drugs in MDOC Prison Facilities Poses a Substantial Risk of Health and Safety to Inmates

For a claim based on "failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. *See also Brown v. Bagery*, 207 F.3d 863, 867 (6th Cir. 2000); *Rhodes v. Michigan*, 10 F.4th 665, 674 (6th Cir. 2021) (Eighth Amendment analysis requires conditions posing "a substantial risk of serious harm").

For example, the Sixth Circuit has determined that cold temperatures in a prison cell, *Spencer*, 449 F.3d at 728-729, improperly installed bunk beds, *Brown*, 207 F.3d at 867-868, and, dangerous heavy laundry carts handled by a prisoner

21

porter, *Rhodes,* 10 F.4th at 674, satisfied the Eight Amendment analysis and demonstrated an objectively substantial risk of serious harm.

The Supreme Court has long considered that the presence of drugs in prison poses a substantial risk of harm to the inmate population. The presence of drugs and alcohol in prison facilities is a "direct threat to legitimate objectives of the corrections system, including rehabilitation, the maintenance of basic order, and the prevention of violence in the prisons." "*Overton v. Bazzetta*, 539 U.S. 126, 129 (2003).

"Prevention of the entry of illegal weapons and drugs is vital to the protection of inmates." *Florence v. Bd. of Chosen Freeholders of Burlington*, 621 F.3d 296, 307 (3d Cir. 2010) (citing *Bell*, at 947) (citations omitted). "It is self-evident that preventing the introduction of weapons and drugs into the prison environment is a legitimate interest of concern for prison administrators." *Id.* (citing *Bell*, 441 U.S. at 540; *Overton*, 539 U.S. at 134; *Block*, 468 U.S. at 586). As the Seventh Circuit aptly explained, "[t]he presence of drugs in prison can lead to violence and the prospect of correctional officers selling illegal drugs to prisoners is an obvious security risk." *Taylor v. O'Grady*, 888 F.2d 1189, 1197 (7th Cir. 1989). *See also United States v. Ulbricht*, 858 F.3d 71, 126 (2d Cir. 2017) ("No federal judge needs to be reminded of the tragic consequences of the traffic in dangerous substances on

22

the lives of users and addicts, or of the risks of overdose and other ramifications of the most dangerous of illegal drugs.").

Similarly, it is the position of the Federal Bureau of Prisons that the "harm of drugs in [prisons] is clear."[3] "Drugs disrupt [prisons] from providing a safe and secure environment for inmates." *Id*. Drug and alcohol intoxication is a leading cause of death in state prisons, behind illness and suicide.[4] "Fentanyl in particular is a dangerous, and potentially lethal, controlled substance." *United States v. Pooler*, 2020 U.S. Dist. LEXIS 224934, at *19 (S.D. Ohio Dec. 1, 2020). "[B]ecause of fentanyl's extreme potency, the risk of overdose is great, particularly when the user is inexperienced or unaware of what substance he or she is using." *Id*. (citation omitted).

Accordingly, the presence of drugs and drug smuggling in MDOC prisons, orchestrated by MDOC employees, presents a substantial risk of deadly harm to inmates. As alleged in Plaintiff's complaint, this harm was known and the risks had manifested on several occasions prior to Seth's death, including when two prisoners were attacked and killed related to drug smuggling in prison and when two prisoners

---

[3] U.S. Dept. of Justice, Office of the Inspector General, The Federal Bureau of Prisons' Drug Interdiction Activities - Report Number I-2003-002, https://oig.justice.gov/sites/default/files/legacy/reports/BOP/e0302/final.pdf.

[4] U.S. Dept. of Justice, Office of Justice Programs, Bureau of Justice Statistics, Mortality in State and Federal Prisons, 2001-2016 - Statistical Tables, https://www.bjs.gov/content/pub/pdf/msfp0116st.pdf, Tables 2-3.

had overdosed on smuggled drugs just before Seth's death. (RE 3; *supra* p. 3-10). Courts "must not shrink from their obligation to "enforce the constitutional rights of all 'persons,' including prisoners." *Brown v. Plata*, 563 U.S. 493, 511 (2011)*.* "Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Id*. "

### c. Plaintiffs' Complaint Properly Alleges Defendants Disregarded Known Risks to the Safety of Inmates Including Seth Zakora

A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. at 842 (citation omitted). When a danger is "so common and uncontrolled" in the prison, "it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who" would be harmed. *Id*. at 843-44.

"The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes

from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk [] for reasons personal to him or because all prisoners in his situation face such a risk." *Id*. at 843 (citations and quotations omitted). Further, an official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id*. at 843 n.8.

Reviewing Supreme Court precedent, the Sixth Circuit explained, "those cases establish a clear standard: "A prison official's 'deliberate indifference' to a substantial risk of harm violates the Eighth Amendment." *Rhodes*, 10 F.4th at 676 (quoting *Farmer*, 511 U.S. at 828). "As simple as that. The case law does not call for the inquiry into voluntariness or compulsion." *Id. See also Rice v. Corr. Med. Servs. (In re Estate of Rice)*, 675 F.3d 650 (7th Cir. 2012) ("prison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies.").

    i. <u>The Complaint States a Claim Against the Supervisory Defendants: Washington, Hoffner, and Rivard For Failure to Protect and Failure To Train</u>

Supervisory liability requires some "active unconstitutional behavior" on the part of the supervisor. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). At no point did Plaintiff "apparently concede" that Defendants did not engage in any active constitutional behavior as the Magistrate incorrectly claimed. (RE 53, Page ID # 38).

Defendants deliberate indifference and failure to act in response to known drug smuggling is a sufficient "act or omission" to be held personally liable under the Eighth Amendment.

It is well established that "active" behavior does not mean "active" in the sense that the supervisor must have physically put his hands on the injured party or even been physically present at the time of the constitutional violation. *See, e.g.*, *Campbell v. City of Springboro*, 700 F.3d 779, 790 (6th Cir. 2012). Otherwise, "[t]he obligation to 'provide' these basic needs [under the Eighth Amendment] would have no meaning if a prison official could fail to provide them and then evade liability simply by pleading that he failed to act." *Spencer v. Bouchard*, 449 F.3d at 731. "That is why the Supreme Court has explicitly stated that a prisoner's Eighth Amendment claim may be based on 'a prison official's act or omission.'" *Id*. (quoting *Farmer*, 511 U.S. at 834).

The Magistrate and the District Court in its adoption, incorrectly determined that Plaintiff's claim "is not an on-going conditions of confinement claim" and that Plaintiff must show "that Defendants were subjectively aware of a risk that *Zakora* would ingest the illegal drugs." (RE 53, Page ID # 38) (emphasis added).

First, Plaintiff clearly alleges conditions of confinement claim where the complaint alleges rampant drug smuggling by prison guards and deadly risks of harm including instances of violent deaths and overdoses by prisoners. (RE 3). The

conclusion that Plaintiff's claim is not a condition of confinement claim is not supported by any law cited by the Court. Further, the Supreme Court has made clear that courts are not permitted to dismiss legally supported theories of relief on the basis that they were not expressly included in the complaint. *Johnson v. City of Shelby*, 574 U.S. at 11.

Second, while Plaintiff *did* allege facts specific to Seth for several Defendants, requiring facts outlining knowledge of a risk of harm to a particular individual in a conditions of confinement case, such as this, defies long-established Supreme Court precedent. The Supreme Court explained that when a danger in prison is so "common and uncontrolled," like ongoing and documented instances of drug smuggling by guards, "it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who" would be harmed. *Farmer,* at 843-44 (emphasis added).

In response to this incorrect statement of law by the Magistrate, Plaintiff pointed the district court to this Court's recent opinion in *Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 665-66 (6th Cir. 2021). The district court disregarded this argument in full.

In *Moderwell*, the Sixth Circuit's affirmed denial of judgment on the pleadings to supervisory defendants in a suit brought by the estate of a deceased prisoner. *Id*. The Court specifically rejected the official's argument that the plaintiff

27

"must also plead facts showing that the Executive Defendants perceived a risk of harm to [the decedent] specifically." *Id*. at 664. "[T]he Supreme Court has made 'it clear that the correct inquiry is whether [the defendant] had knowledge about the substantial risk of serious harm to a particular class of persons, not whether he knew who the particular victim turned out to be.'" *Id*. (quoting *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Farmer*, 511 U.S. at 843)).

Second, the Court found that allegations of knowledge of circumstances creating risks for inmates including "overcrowding, insufficient medical care, staffing shortage, and numerous detainee deaths and suicides at CCCC," and allegations of inadequate policies and/or failure to implement any policies in response, stated a claim against the supervisor defendants. *Id*. at 665. Similarly, the plaintiff alleged the supervisory defendants knew that officers had the propensity to refuse healthcare to detainees. *Id*. At the pleading stage, these allegations were sufficient. *Id*.

The Court made clear that only after discovery at summary judgement would plaintiff's burden "be to present facts showing that the Executive Defendants knew about the unconstitutional conduct and did more than play a passive role in the alleged violations or show mere tacit approval of the goings on." *Id*. (citations and quotations omitted). "But this burden is not on Plaintiff at the pleading stage." *Id*. (emphasis added) (citing *Hart v. Hillsdale Cty.*, 973 F.3d 627, 638 n.4 (6th Cir.

2020) (explaining that "[a] complaint need not set down in detail all the particularities of a plaintiff's claim against the defendant."). Accordingly, the district court erred in dismissing Plaintiff's claims against Defendants Washington, Rivard, and Hoffner on this basis.

Plaintiffs' complaint states a claim under § 1983 against Defendant Washington. In her capacity as director of MDOC, she has the ultimate supervisory authority of MDOC operation. (RE 3, Page ID # 31, ¶ 13). The complaint alleges that Defendant Washington had substantial knowledge of the risks of drug trafficking and smuggling into MDOC prisons over the previous 8-10 months prior to Seth's death. (*Id*. at Page ID # 37, ¶ 42). The complaint provides detailed allegations of how MDOC officers personally contacted her to inform her of the smuggling and retaliation they faced after coming forward with information about guards smuggling drugs into the MDOC. (*Id*. at Page ID # 37-38, ¶ 43-46). The complaint further alleges MDOC-approved litigation settlements related to claims of retaliation brought by a guard after he came forward with information about guards smuggling drugs into the MDOC. (*Id*. at Page ID # 37-41, ¶ 42-48).

The complaint further alleges that Washington, in her capacity as the Director of MDOC, also knew of the overdoses that occurred at Lakeland the two days prior. Along with other named officials, she failed to order a full investigation or take reasonable measures to curb the overdoses or the instances of guard-smuggled drugs

entering the facility. (*Id*. at Page ID # 36, ¶ 38). Defendant Washington, despite her knowledge, knowingly permitted the drug smuggling operation and inherent dangers of illegal drugs in prison. (*Id*. at Page ID # 39, ¶ 50, 65-67, 75-77).  Her failure to do anything to remedy the problem over the course of almost a year, despite credible allegations, created an even more dangerous prison environment which led to the deaths of several individuals in MDOC, and specifically to the deaths of Seth and the other two individuals in Lakeland Facility. (*Id*.). These allegations state a claim for failure to protect inmates against known risks of danger and serious harm in violation of the Eighth Amendment against Defendant Washington.

Further, her knowledge of the drug smuggling and related dangers demonstrates a question of whether she unlawfully acquiesced in constitutional violations and failed to protect Seth in violation of the Eighth Amendment. *See Brown*, 207 F.3d at 868 (Court assumed warden was aware of unsafe condition where prisoner alleged his "attempts to notify prison officials" and determined the facts alleged "could conceivably show that the warden acted with deliberate indifference towards future health problems"); *Cook v. Martin*, 148 F. App'x 327, 339 (6th Cir. 2005) ("Cook has alleged facts and produced evidence sufficient to establish that [Deputy Warden] Howell was made aware of his placement in the restraint chair, but that Howell acquiesced in Captain Bigcraft's use of the chair.

Howell's failure to properly supervise his subordinates, especially where he has a clear obligation to do so, subjects him to potential liability in the present case.").

Additionally, the allegations state a claim for failure to train against Defendant Washington. Washington has knowledge of a serious and dangerous drug smuggling operation in MDOC but failed to implement polices to prevent guards from smuggling drugs into the facility. (RE 3, Page ID # 37-39, at ¶ 42-48, Page ID # 44, ¶ 75-77). *See Turner v. Cook Cty. Sheriff's Office*, 2020 U.S. Dist. LEXIS 41982, at *13 (N.D. Ill. Mar. 11, 2020) (allegations that a sheriff's "ineffective-or nonexistent-drug detection and treatment policies that allow inmates easy access to drugs and increase the risk/frequency of drug overdoses" in county jail stated a claim of deliberate indifference under the Fourteenth Amendment.); *Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th Cir. 2015) (holding allegations of failure to train/supervise, failure to properly investigate similar complaints, and attempt to cover up a homicide by making false statements were sufficient to show that police chief implicitly authorized the unconstitutional conduct of his subordinates).

The district court thus erred in determining that Defendant Washington could not be liable for failure to train where Washington has knowledge of a serious and dangerous drug smuggling operation in MDOC but failed to implement polices to prevent guards from smuggling drugs into the facility thereby acquiescing in their conduct. (RE 3, ¶ 42-48, 75-77).

Plaintiff also states a claim against Defendant Hoffner. In her capacity as the Warden of Lakeland, Defendant Hoffner is the ultimate supervisory authority of the facility where Seth was incarcerated. (RE 3, Page ID # 31, ¶ 11). The complaint alleges Defendant Hoffner had knowledge of the risks of drug trafficking and smuggling into Lakeland and failed to act reasonably in response. Defendant Hoffner knew there had been two overdoses in the same housing unit the two days prior to Seth's death that had led to hospitalizations. (*Id*. at Page ID # 34, ¶ 28, Page ID # 36, ¶ 38; *supra* n. 3). Despite this knowledge, she did not order an investigation into the housing unit where back-to-back overdoses had occurred and only ordered an investigation after Seth's death. (*Id*. at Page ID # 36, ¶ 38).

Further, the complaint alleges that Defendant Hoffner was made aware through the chain of command of the allegations of drug smuggling into the facility as related to Defendant Chrisman, the facility inspector. (*Id*. at Page ID # 35, ¶ 31). The complaint further alleges Defendant Hoffner's administrative assistant, Defendant Rurka, knew that drugs were being smuggled into Lakeland Facility, claiming the facility knew the drugs were being brought in. (*Id*. at Page ID # 36, ¶ 40). Rurka told Plaintiff Brandy Zakora this information. (*Id*.). This suggests that his direct supervisor, the warden Defendant Hoffner, was also aware of the drugs being brought into the facility before the overdoses in C-Unit.

As warden, she was directly responsible for decisions relating to conditions of confinement and should be held accountable for her failure to take reasonable measures to abate the drug smuggling. *See Brown,* 207 F.3d at 867–68 (reversing dismissal where a plaintiff alleged that his bunkbed was improperly installed, posing a risk of injury to him and other inmates, that the warden knew of the problem, and that the warden failed to act).

Like Defendant Washington, the complaint states a claim against Defendant Hoffner for failure to train. Hoffner knew that drugs were being smuggled into the prison and that prisoners had overdosed but failed to train and supervise to prevent or correct this behavior. (RE 3, Page ID # 35, ¶ 31-32, 50). Defendant Hoffner failed to implement any corrective actions in response to the overdoses the two days prior and acquiesced in the coverup and non-investigation into the female guard smuggling in drugs. (*Id*. at ¶ 36-38). Further, Hoffner is the Warden and on-site supervisor to the facility inspectors and failed to train them on the proper standard for investigating claims of drug smuggling in the prison. (*Id*. at ¶ 31, 50, RE 42-2).

Defendant Rivard is the supervisory official who, next to the facility warden, is the supervisor for the Inspectors in charge of facility management and security. (RE 3, ¶ 12, 31; RE 42-2). Specifically, he was assigned as Defendant Chrisman's supervisor. (RE 42-2). The complaint alleges Defendant Rivard knew of the drug smuggling operation in the MDOC and the previous overdoses at Lakeland but failed

to take reasonable measures in response. (RE 3, at ¶ 31, 38, 50, 65, 75-77). Specifically, Defendant Rivard, as supervisor of the Inspectors of the facility, failed to train the inspectors on the proper procedures for investigating claims of drug smuggling. (*Id*. at ¶ 31, 38, 50, 75-77).

At the pleading stage, specific facts are not required. *Keys v. Humana, Inc*., 684 F.3d at 608. *See also Phillips v. Roane County*, 534 F.3d 531, 542 (6th Cir. 2008) (affirming denial of summary judgment and holding "we do not read [precedent] as prescribing a rule that plaintiffs cannot present general allegations to prove that each individual has the requisite knowledge for deliberate indifference"). These allegations state a claim for deliberate indifference to a serious risk to inmate safety against Defendants Washington, Hoffner, and Rivard.

ii. The Complaint States A Claim for Failure To Protect Against Defendants Chrisman and Huntley

As Inspectors, Defendants Chrisman and Huntley were the chief investigation officers and responsible for the security and safety of those at the facility. (RE 3, ¶ 7-8; RE 42-2). In its adopting the Magistrate's Report, the district court erroneously failed to consider Plaintiff's allegations against any MDOC Defendant except Chrisman. Further, the district court erred in determining that the allegations failed to state a claim under the Eighth Amendment.

Defendant Chrisman was specifically aware of the drug smuggling operation at Lakeland. (RE 3, ¶ 29-30). The complaint specifically alleges that a prisoner

informed the Inspectors of the details of how illegal drugs were being smuggled into the facility and that large amounts of drugs were being supplied to Seth. (*Id*. at Page ID # 34, ¶ 30). The district court was not free to ignore these allegations contained in Plaintiff's complaint and described in Plaintiff's Response briefing. Further, Defendants' own documentation demonstrates that Chrisman was aware of the allegations of drug smuggling at Lakeland and failed to investigate despite evidence that the prisoner who came forward to him was a documented informant in the MDOC. (RE 3, ¶ 50, 55-56, 58-59) (RE 37-4, Page ID # 315, 304, 316). Seth was the third prisoner to overdose after Chrisman learned of guard-led drug smuggling and dangerous drugs in the prison and Chrisman had specific knowledge related to Seth and large amounts of dangerous drugs he was given. (RE 3, ¶ 28-30).

These allegations state a claim for failure to protect against an obvious risk of harm in violation of the Eighth Amendment. *Farmer*, at 847 (prison officials are liable under Eighth Amendment "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *Rice*, 675 F.3d at 665 ("prison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies.").

Plaintiffs allege that as the other Inspector at the facility, Defendant Huntley was also aware that a prisoner had been sending kites to the facility Inspectors with specific and detailed information about drug smuggling in the prison. (RE 3, ¶ 29).

In addition to this information, Defendant Huntley and Defendant Chrisman were aware of back-to-back overdoses at the facility in the same housing unit on dangerous and illegal drugs. (*Id*. at ¶ 28-31). As the chief investigation officers, Defendants failed to act to prevent dangerous drugs in the facility and to prevent further overdoses. (*Id*. at ¶ 38, 50, 55-56, 58-59).

Given Huntley and Chrisman's high-level job duties, such abandonment of duties is also actionable under section 1983. *See Taylor v. Michigan Dep't of Corr.*, 69 F.3d at 81 ("In the instant case Foltz is charged with abandoning the specific duties of his position—adopting and implementing an operating procedure that would require a review of the inmate's files before authorizing the transfers—in the face of actual knowledge of a breakdown in the proper workings of the department. A jury could find on the facts that Foltz personally had a job to do, and that he did not do it."); *Leary*, 349 F.3d at 903-04 (explaining official with supervisory responsibility can be liable under § 1983 and thus "responsible for failing to perform his job properly or for acquiescing in the constitutional violations resulting from his delegation of this responsibility."). *See also Moderwell v. Cuyahoga Cty.*, 997 F.3d at 663-66.

Plaintiff states a claim for violation of the Eighth Amendment against Defendants for their failure to take reasonable measures to abate the risk of harm from illegal drug smuggling and usage from their knowledge of both from the

prisoner-informant and in response to back-to-back drug overdoses leading to hospitalizations at the facility the days prior. Accordingly, the district court erred in granting Defendants' dispositive motions.

> ### iii.  The Complaint States A Claim For Deliberate Indifference Against Defendants Johnson and Mobley

In adopting the Magistrate's Report and Recommendation, the district court erred in requiring Plaintiff to provide specific facts that are not required at the pleading stage. The court determined that because the complaint did not include the specific time when Seth started to overdose and the specific time at which he was found dead several hours later - the claim was not plausible. (RE 53, Page ID # 539). This finding was in err – "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Keys*, 684 F.3d at 608; *see also Golf Vill. N. LLC v. City of Powell*, 826 F. Appx. 426, 431 (6th Cir. 2020); *Moderwell*, at 997 F.3d at 665.

The Sixth Circuit has "long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Comstock v. McCrary*, 273 F.3d at 702. The Circuit has also explained that "[i]t would be obvious to a layman that a person who had taken an overdose of pills would require immediate medical attention." *Suhuh v. Mich. Dept. of Corr.*, 2017 U.S. App. LEXIS 25351, at *7 (6th Cir. Dec. 14, 2017).

Plaintiff's allegations state a claim for deliberate indifference to a serious medical need. Plaintiffs allege that a prisoner had informed a guard, either Mobley or Johnson, that Seth was unwell or that there appeared to be something wrong with him. (RE 3, ¶ 24). This comment followed back-to-back overdoses in the same housing unit both days prior. (*Id*. at ¶ 28). The complaint alleges that neither Defendant checked on Seth. (*Id*. at ¶ 24). At the pleading stage, these allegations state a claim for deliberate indifference to an obvious serious medical need against the corrections officers Defendants, Johnson and Mobley.

This is not a situation where Plaintiff merely neglected to conduct discovery on a certain issue in response to a timely summary judgment motion. For example, in the cases cited by the Magistrate, *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 618 (6th Cir. 2014), (RE 53, Page ID # 531-532), *Cacevic v. City of Hazel Park*, 226 F.3d 483, 486 (6th Cir. 2000), *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989), the parties were all afforded an opportunity to conduct discovery before any motions for summary judgment were granted.

Here, Plaintiff was not afforded the opportunity to conduct any discovery or cross examine Defendants on their sworn statements through deposition or written discovery. Because Plaintiff states a claim against the corrections officers for deliberate indifference to his serious medical need, granting summary judgment

without an opportunity for discovery was reversible err. *See White's Landing*, 239 F.3d at 230; *Moore*., 718 F. Appx. at 321.

Additionally, Defendants' affidavits are not dispositive of the allegations against them. Defendants admit to being on duty at the time Seth overdosed. (Affidavit of Johnson, RE 37-7; Page ID # 343; Affidavit of Mobley, RE 37-8, Page ID # 338). While Defendants claim they were not informed that Seth was unwell, or were only informed moments before, Plaintiff's complaint specifically alleges they were made aware and failed to act reasonably with a timely response. (RE 3, Page ID # 45, ¶ 84-87). Further, Defendant's records demonstrate that he had been on duty in the C-5 housing unit for nearly two hours prior. (RE 37-7, Page ID # 344, ¶ 4). If Plaintiff's allegations prove true, that Seth was not checked on in response to notice that he was not medically well, a genuine issue of material fact exists making summary judgment inappropriate.

Plaintiff's allegation that Seth was covered in his sheet from head to toe when found dead also prevents the officers from having seen Seth asleep in his bunk, as they both claim to have witnessed. (RE 3, ¶ 25); (RE 37-7, ¶ 7; RE 37-8, ¶ 7). Defendants' affidavits do not address this issue. Similarly, Defendants records show Seth was visibly ill when found with "blood and bodily fluids [] discharged from his nose and month." (RE 37-4, Page ID # 302; RE 37-2, Page ID # 259). Finally, Defendants' records also indicate that Defendant Johnson and others moved Seth's

body prior to any photographs being taken or documentation made. (RE 37-4, Page ID # 300-01).

If Defendants saw Seth asleep, a reasonable jury could find they saw the blood and bodily fluids clearly visible on his body. Given that two other inmates had already overdosed in this same unit days prior, a reasonably jury could find their failure to provide or summon care for Seth was deliberately indifferent. (RE 3, Page ID # 34, ¶ 28). Thus, even without being afforded an opportunity to conduct discovery, Plaintiff still demonstrates a genuine issue of material fact against these Defendants. *See Roane*, 534 F.3d at 541 ("The correctional officers may 'not escape liability if the evidence showed that [they] merely refused to verify underlying facts that [they] strongly suspected to be true, or declined to confirm inferences of risk that [they] strongly suspected to exist.') (quoting *Farmer*, 511 U.S. at 843 n.8) (citing also *Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) ("In most cases in which the defendant is alleged to have failed to provide treatment, there is no testimony about what inferences the defendant in fact drew. Nonetheless, in those cases, a genuine issue of material fact as to deliberate indifference can be based on a strong showing on the objective component."). Accordingly, where Plaintiff states a claim against Defendants and had not been afforded any opportunity to conduct reasonable discovery, the court erred in granting summary judgment to Defendants Mobley and Johnson.

iv.  Plessis States a Claim Against Defendants Rurka, Lass, Oaks, Wolodkin, and Coleman

The district court erred in dismissing Plaintiff's claims against Defendant Rurka and Lass. The Magistrate specifically noted that Plaintiff's complaint alleges that these two Defendants knew that "drugs were being smuggled into the prison inside basketballs that were thrown over the fence, but they could not catch the perpetrator." (RE 53, Page ID # 523, citing RE 3, Page ID # 36). Defendant Rurka is the Warden's Administrative Assistant. Defendant Lass was an MSP detective sergeant. (RE 3, Page ID # 32, ¶ 15-16). That they both knew this information and informed Ms. Zakora demonstrates the widespread knowledge of rampant drug smuggling in the facility. *See Moderwell*, at 997 F.3d at 664 (drawing all inferences in plaintiff's favor in reviewing knowledge of severe overcrowding in prisons).

In this vein, Plaintiff specifically alleges that Defendant Lass, and the other Defendant Troopers involved in the investigation, "knew and or participated in the drug smuggling and knew of the risks and harm associated with dangerous illegal drugs." (RE 3, Page ID # 40, ¶ 57). Further, Plaintiff's alleges that these Defendants, collectively, ignored their knowledge and did not do anything to curb the introduction, spread, and usage of dangerous drugs in prison. (*Id*. at Page ID # 41, ¶ 58). Here, Plaintiff properly alleges knowledge of a risk of harm, drug smuggling and the harm associated with dangerous illegal drugs, and a failure to respond reasonably. Plaintiffs' allegations demonstrate knowledge and involvement of the

41

drug smuggling through Lass's statement and Defendant Troopers collective failure to investigate credible allegations of drug smuggling. This states a claim for deliberate indifference. *See Farmer*, 511 U.S. at 847.

Further, it is only after discovery at the summary judgement stage would Plaintiff's burden "be to present facts showing that the [] Defendants knew about the unconstitutional conduct and did more than play a passive role in the alleged violations or show mere tacit approval of the goings on." *Moderwell*, 997 F.3d at 665. Where specific allegations are not necessary, Plaintiff's allegations are sufficient to put Defendants on notice of the claims. *Keys*, 684 F.3d at 60; *Phillips v. Roane County*, 534 F.3d at 542; *Farmer*, 511 U.S. at 847. Accordingly, the Magistrate erred in recommending dismissal of Plaintiff's claims against Rurka, Lass, Oaks, Wolodkin, and Coleman.

While the Magistrate disregarded Plaintiff's counsel's affidavit discussing his need for discovery on the claims against all Defendants, making summary judgment improper, (Declaration of Counsel, RE 42-3), none of the evidence provided by Defendants is dispositive of Plaintiff's claims. Defendants' description of their alleged "involvement" in the investigation into the death of Seth, the only thing discussed by Defendants in their affidavits, is by no means equivalent to a finding that Defendants were unaware of rampant drug smuggling, nor does it demonstrate they acted reasonably in response to knowledge of a substantial risk of harm to

42

inmates. *Farmer,* at 847. Because Plaintiff's complaint alleges the requisite knowledge and supporting facts, summary judgment for Defendants was improper.

Further, despite providing self-serving affidavits without any opportunity for cross examination or discovery, no Defendant rebuts the allegations in the complaint, specifically that Lass, a sergeant detective, told Ms. Zakora that she, along with the Warden's Assistant, knew that drugs were being smuggled in via basketballs into the prison. (Declaration of Wolodkin, RE 34-2, Page ID # 169-172; Declaration of Coleman, RE 34-1, Page ID # 165-168; Declaration of Oaks, RE 34-4, Page ID # 177-200; Declaration of Lass, RE 34-3, Page ID # 173-176). Despite explicit allegations against her in the complaint, Defendant Lass does not provide a single sworn statement to challenge that she was aware of drug smuggling in MDOC. (RE 34-3, Page ID # 175). Notably, she limited her statements to her knowledge of Seth as an individual, which as discussed, is not the relevant inquiry into state official's knowledge of obvious serious risks of harm facing incarcerated inmates. *See Farmer* at 843-44.

Similarly, the affidavits of Defendant Wolodkin, Coleman, and Oaks are not dispositive of liability. Like Lass, they only claim no knowledge of Seth as an individual. (RE 34-2, Page ID # 171; RE 34-4, Page ID # 179; RE 34-1, Page ID # 167). Despite providing sworn statements in response to Plaintiff's allegations, Defendants also fail to make a single sworn statements relating to their knowledge

of dangerous and illegal drug trade in MDOC, known to be operated by prison guards. (*Id*.). Defendants' failure to provide a single sworn statement in response to the serious allegations against them, i.e., that Defendant Troopers knew and or participated in the drug smuggling and knew of the risks and harm associated with dangerous illegal drugs, provides is a reasonable inference that these allegations are true and worthy of court-sanctioned discovery. (RE 3, ¶ 40-41, 57). Defendants' explicit failure to address the claims against them in their sworn affidavits further supports a finding that the grant of summary judgment was improper and reversible error.

### d. Defendants Are Not Entitled to Qualified Immunity

"Although a defendant's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Moderwell*, 997 F.3d at 660.

This Court uses a two-pronged test to evaluate whether qualified immunity is appropriate by asking (1) "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated," and (2) "whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). While the plaintiff bears the ultimate burden of showing that the defendant is not entitled to qualified immunity, *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006), the defendant has the initial burden of showing that his

conduct was objectively reasonable under then-existing law. *Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004).

Defendants claim they are entitled to qualified immunity because no constitutional violation occurred, and even if one did, they cannot be held liable because it is not clearly established. (RE 37, PageID.205). Defendants ignore the Supreme Court's direction that they have an affirmative duty to provide reasonable safety to inmates. *Farmer*, 511 U.S. at 847; *Hudson*, 468 U.S. at 527; *Spencer*, 449 F.3d at 728; *Brown*, 207 F.3d at 867–68. No reasonable state officials would find it appropriate to tolerate guard-involved drug smuggling and fail to remove illegal drugs from prison, despite documented harm to prisoners as a result. *See Moderwell*, at 660 ("Thus, when 'no reasonable correctional officer could have concluded' that the challenged action was constitutional, the Supreme Court has held that there does not need to be a case directly on point.") (quoting *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020)). *See also Guertin v. Michigan*, 912 F.3d 907, 933 (6th Cir. 2019); *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019).

The obvious risk of dangerous drugs smuggled into prison is the overdose and death of prisoners, as occurred here. Rampant drug smuggling created an objectively unsafe environment in MDOC facilities. Plaintiff has presented sufficient factual allegations to support claims of failure to protect and deliberate indifference in violation of the Eighth Amendment because Plaintiff has presented allegations of an

objectively serious risk to inmates' safety, as well as personal involvement if MDOC officials in their failures and toleration of dangerous drug smuggling by guards in MDOC facilities. Plaintiff has presented allegations that the Lakeland officials knew of and disregarded risks to Seth from known drug smuggling in the prison.

The Supreme Court has made clear, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, at 847. Liability for deliberate indifference can be based on either "a prison official's act or omission." *Id*. at 834. Plaintiffs' complaint alleges what *Farmer* prohibits, failure to take reasonable measures (or any measures) to abate a serious risk of harm, i.e., drug smuggling in MDOC and Lakeland Facility, caused Seth's' death. Accordingly, because Plaintiff's complaint states a claim against all Defendants, they are not entitled to qualified immunity and the district court erred in granting dismissal.

II.  THE DISTRICT COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Despite the fact that Defendants did not make a single argument related to FRCP 15(c) or the relation back analysis in their opposition to Plaintiff's motion for leave to amend the complaint, the Magistrate and district court found that Plaintiff's claims do not relate back against the drug smuggling officers who were discussed

and named in the proposed Second Amended Complaint. (MDOC Response to Motion for Leave, RE 49, Page ID # 503; MSP Response to Motion for Leave, RE 50, Page ID # 514). Notably, no proposed Defendant has argued they lacked noticed of this suit. (RE 50). The fact that without any court-sanctioned discovery a previously unknown corrections officer called Plaintiff's attorney out of the blue to shed light on *who* was smuggling the dangerous drugs in the facility where Seth passed away does not somehow create an argument that Plaintiff's attorney could have discovered this sooner. To the contrary, it supports widespread knowledge amongst Defendants of a serious risk of harm to prisoners in MDOC. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 25(a)(2).

As discussed herein, smuggling drugs into prisons is unlawful, creates a substantial risk of serious harm to inmates, demonstrates deliberate indifference to that risk, and is a violation of the Eighth Amendment. Accordingly, Plaintiff states a claim against the proposed smuggling Defendants.

While the Magistrate and district court declined to follow Plaintiff's citation to *Berndt v. Tennessee,* 796 F.3d 879, 883 (6th Cir. 1986), (RE 59, Page ID # 612), the case should have been followed because it is binding precedent and analogous to the facts of the case.

 *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996), cited by the Magistrate, (RE 53, Page ID # 563) which what not decided en banc, did not overrule *Berndt*,

but <u>distinguishes</u> it in a way that <u>favors Plaintiff's ability to amend</u> in this case. *See Cox,* 75 F.3d at 240. *Berndt* has not been overruled by the Sixth Circuit. "Under the law-of-the-circuit doctrine, only the Court sitting en banc may overrule published circuit precedent, absent an intervening Supreme Court decision or a change in the applicable law." *Cooper v. MRM Inv. Co.,* 367 F.3d 493, 507 (2004). The Magistrate's citation to non-precedential and non-binding circuit cases does not change the viability and applicability of *Berndt.* Similarly, the Magistrate's reliance upon a non-binding district court case, this does not change the 'law-of-the-circuit' doctrine as explained by the Supreme Court. *Id.* (RE 53, Page ID # 563).

Thus, the Magistrate's refusal to follow *Berndt* despite the similar circumstances, this was error. While *Berndt* was brought by a pro se plaintiff, the allegations in the complaint, like those in the instant case, "are of such a serious nature [it] demands that the complaint be closely scrutinized by the district court before it is dismissed in the pleading stage of litigation." *Berndt,* 796 F.3d at 883.

Further, *Berndt* supports relation back in this case for all the drug smuggling officers defendants. In *Berndt*, the plaintiff did not name *any* John Doe Defendants. *Id.* at 881. To the contrary, he named the State of Tennessee and a prison, both protected by Eleventh Amendment immunity. *Id.* When the Court properly dismissed those claims after the statute of limitations had run, the plaintiff argued alternatively that "although defective in naming the proper defendants, in substance,

alleged that certain unnamed individuals had violated his rights." *Id*. at 882. Reviewing the requirements of Fed. R. Civ. P. 15(c), the Circuit remanded to allow plaintiff "a reasonable opportunity to amend." *Id*. at 884.

In making this determination, the Sixth Circuit explained that among the appropriate considerations is the Circuit's "belie[f] that Rule 15(c) does not require that the new defendants received actual notice. It is enough that the new defendants received constructive notice of the suit." *Id.* at 884 (6th Cir. 1986). "Under some circumstances, notice can also be imputed to a new defendant." *Id*. The Court explained: "Even more pertinent to this case, where the complaint alleges in substance that the new defendants committed the illegal acts and are officials of the original defendant, that relationship may imply receipt of sufficient notice." *Id*. This last sentence is relevant to the facts alleged in this case was the sole basis for the *Cox* Court's failure to apply *Berndt* it to the facts of *Cox*. *See Cox,* 75 F.3d at 240 ("In *Berndt*, knowledge was imputed to the newly added defendants because they were officials of the originally named defendant, the State of Tennessee.").

Thus, because Plaintiff named the supervising officials including the director of the MDOC, the Warden of the facility, this Court should find Defendants Blair, Ivany, and Chase had constructive imputed notice of this action where "the complaint alleges in substance that the new defendants committed the illegal acts and are officials of the original defendant." *Id. See also O'Brien v. City of Grand*

49

*Rapids*, 783 F. Supp. 1034, 1039 (W.D. Mich. 1992) (finding constructive notice where "defendants, like the originally named individual officer defendants, are also officers in the Grand Rapids Police Department, one of the original defendants in this action."); *Marable v. Bowling Green State Univ.,* 2008 U.S. Dist. LEXIS 139244, at *4 (N.D. Oh. Oct. 23, 2008) ("In the instant matter, Bembry is employed by BGSU and allegedly committed the discriminatory conduct described in the original Complaint. She is also being represented by the same attorneys as BGSU. These relationships reinforce Bembry's constructive notice of this lawsuit prior to the expiration of the limitations period."); *Ramirez v. Webb*, 1988 U.S. Dist. LEXIS 1818, at *7 (W.D. Mich. May 3, 1988) ("Here several factors lead the Court to conclude that the moving defendants had adequate notice of this suit. First, all defendants are employees of the same governmental agencies."). Accordingly, the court erred in denying Plaintiff's motion in reliance on the *Cox* line of cases where *Cox* and *Berndt* are both viable law and support Plaintiff's ability to amend to add the names of the officers smuggling drugs into MDOC facilities.

Constructive notice should also be found where a different MDOC corrections officer, one not involved in drug smuggling and the death of an inmate, was aware of the instant lawsuit, knew who the proper Defendants were and understood their relation to the allegations in Plaintiffs' complaint. (RE 47). Indeed, a MDOC corrections officer employed in the facility at the time of Seth's death recently came

forward to the undersigned and provided the identities of the three individuals, including the Jane Doe alleged in Plaintiffs' complaint, who smuggled drugs that killed Seth into Lakeland Correctional Facility. Further, the named Defendants' own documents used to support their motion for summary judgment demonstrate that Defendants themselves and counsel were aware of the female officer alleged to be smuggling drugs into Lakeland Correctional Facility, now known to be Tammy Blair. (RE 37-4, Page ID # 317-318). *See Henderson v. Hackel*, 170 F.R.D. 430, 434 (E.D. Mich. 1997); *Daily v. Monte*, 26 F. Supp. 2d 984, 988 (E.D. Mich. 1998).

Following *Cox*, the Eastern District of Michigan addressed a request to add an officer in place of an unnamed Defendant in the complaint. *See Henderson*, 170 F.R.D. at 431. The Court explained that "[s]ince the effect of Rule 15(c) is to avoid the impact of the statute of limitations, the sufficiency of the notice must be evaluated in light of the policy objectives of the statute of limitations, i.e., to avoid undue surprise, to permit investigation and collection of evidence while it is fresh and other similar concerns." *Id*. at 433-34.

In *Henderson*, the court granted the plaintiff's motion for leave to amend his complaint "to add as defendants the names of the specific jail employees" because it was "fair to presume from the professional relationship between the defendants and the language of the complaint that the newly named jail employees had sufficient and timely notice that plaintiff had filed the instant suit." 170 F.R.D. at 434. The

court found "it simply unbelievable that defendant Hackel, when served with plaintiff's complaint, did not conduct a thorough investigation of the serious allegations it contained. Indeed, an investigation of this sort would have been absolutely essential in order for defendant Hackel to have truthfully answered the allegations in plaintiff's complaint. Such an investigation, moreover, would have surely had to include discussions with the jail employees accused of wrongdoing in plaintiff's complaint." *Id*.

Here too would Defendants have necessarily investigated the claims in Plaintiff's complaint alleging a guard-led drug smuggling problem in the MDOC and at Lakeland Correctional Facility originally alleged to be facilitated by a female guard involved with an inmate.

Similarly, in *Daily v. Monte*, the court found "that the newly named Defendants, all former jail personnel in the Sheriff's department, knew or should have known that they would be named, but for the Plaintiff's ignorance as to their identity. Again, given the seriousness of Plaintiff's allegations, I find that Defendants must have been aware of the contents of Plaintiff's Complaint pursuant to the County's investigation." 26 F. Supp. 2d at 988 (emphasis added). In *Daily*, "because the investigation took place within the time for service," the court determined that the new defendants "knew or should have known they would be named within the time required by the Rule." *Id*. Here, the time for service was tolled

for almost a year as a result of the Court's orders staying the case. (RE 4, Page ID # 50, ¶ 5; RE 5; RE 8, Page ID # 59). Accordingly, these new Defendants can be found to have constructive notice of Plaintiffs' claims against them, and the district court erred in denying Plaintiff's motion for leave to amend.

As explained by the Eastern District in *Garretson v. City of Madison Heights*, 2005 U.S. Dist. LEXIS 3669 (E.D. Mich. Dec. 15, 2005) in granting the plaintiff's motion for leave to amend, the newly added defendant "Worton had constructive if not actual, notice of this action and his likelihood of being named a Defendant. All of the officers primarily responsible for the alleged incident were named. The City of Madison Heights and the Madison Heights Police Department are also Defendants. Undoubtedly, Worton is aware of the allegations and the ongoing investigation. Therefore, Worton had at least constructive notice that the action would have been brought against him as well, were his identity known." *Id*. at *5-6.

Like in the cases cited herein, proposed Defendants Blair, Ivany, and Thomas received notice of Plaintiffs' lawsuit alleging guard-leg drug smuggling that caused the untimely death of Seth and knew or should have known that Plaintiffs intended to name them as Defendants. Plaintiff made repeated references in his complaint to guards that were smuggling drugs. (RE 3, ¶ 19, 27, 29, 32, 41-52). In addition to the seriousness of Plaintiffs' allegations, Defendants are not prejudiced where no discovery has taken place. *See Marable v. Bowling Green*, 2008 U.S. Dist. at *6

53

("Additionally, discovery has not yet begun, so Bembry cannot show prejudice in presenting a defense by virtue of Plaintiff's delay."); *Henderson v. Hackel*, 170 F.R.D. at 434 (finding policy objectives of avoiding undue surprise and to permit investigation and collection of evidence while fresh met in granting Plaintiff's motion for leave to name John Does outside of statute of limitations). Accordingly, the district court erred in denying Plaintiff's motion for leave to amend to add as defendants the MDOC guards who were smuggling illegal drugs into prison facilities which caused the untimely and tragic death of Seth Zakora.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests this Court reverse the district court's grant of dismissal and summary judgment to Defendants and remand the case for reasonable discovery and an opportunity to amend the complaint to include the newly discovered defendants.

Respectfully Submitted,

Dated: November 22, 2021

*/s/ Christopher P. Desmond*
Christopher P. Desmond (P71493)
Madeline M. Sinkovich (P82846)
Johnson Law, PLC
535 Griswold Street, Suite 2600
Detroit, MI 48226
Tel: (313) 321-8300
cdesmond@venjohnsonlaw.com
*Counsel for Plaintiff-Appellant*

# **CERTIFICATE OF COMPLIANCE**

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]    this brief contains <u>12,684</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]    this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because"

[X]    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman, or

[ ]    this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated: November 22, 2021                     */s/ Christopher P. Desmond*

                                             *Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: November 22, 2021               */s/ Christopher P. Desmond*

*Counsel for Plaintiff-Appellant*

# APPENDIX

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b)

| Record Entry No. | Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1-17 |
| 3 | First Amended Complaint | 29-47 |
| 33 | MSP Defendants' Motion to Dismiss / for Summary Judgment | 136-137 |
| 34 | MSP Defendants' Brief in Support | 138-164 |
| 34-1 | Declaration of James Coleman | 165-168 |
| 34-2 | Declaration of James Wolodkin | 169-172 |
| 34-3 | Declaration of Heather Lass | 173-176 |
| 34-4 | Declaration of Brandon Oaks | 177-180 |
| 36 | MDOC Defendants' Corrected Motion to Dismiss / for Summary Judgment | 183-188 |
| 39 | MDOC Defendants' Motion to Dismiss / for Summary Judgment | 351-353 |
| 37 | MDOC Defendants' Brief in Support | 189-217 |
| 37-2 | MDOC Critical Incident Report | 219-286 |
| 37-3 | Autopsy and Toxicology Report | 287-298 |
| 37-4 | MSP Incident Report | 299-330 |
| 37-5 | MSP Incident Report | 331-334 |
| 37-6 | MSP Incident Report | 335-341 |
| 37-7 | Affidavit of Steven Johnson | 342-345 |
| 37-8 | Affidavit of Chadwick Mobley | 346-349 |
| 42 | Plaintiff's Response to Defendants' Dispositive Motions | 358-390 |
| 42-1 | MDOC Officer Lawsuit | 391-432 |

| 42-2 | MDOC Inspector Position Description | 433-438 |
|------|-------------------------------------|---------|
| 42-3 | Declaration of Plaintiff's Counsel | 439-440 |
| 47 | Plaintiff's Motion for Leave to Amend Complaint | 466-481 |
| 47-1 | Proposed Second Amended Complaint | 482-498 |
| 49 | MDOC Defendants Response to Motion for Leave | 501-507 |
| 50 | MSP Defendants' Response to Motion for Leave | 508-517 |
| 53 | Report and Recommendation | 522-546 |
| 54 | Plaintiff's Objections | 547-587 |
| 59 | Opinion and Order Granting Judgment and Dismissal to Defendants | 607-612 |
| 60 | Judgment | 613 |
| 61 | Notice of Appeal | 614-615 |